UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re: Chapter 11

PVP KREWSTOWN, LLC Case No. 23-16198-MAM

Debtor.
_______________________________/

**AMENDED CHAPTER 11 PLAN OF**
**REORGANIZATION FOR PVP KREWSTOWN, LLC**

/s/ Thomas A. Messana
Thomas M. Messana
Florida Bar Number 991422
Scott A. Underwood
Florida Bar Number 0730041
Megan W. Murray
Florida Bar Number 0093922
Underwood Murray, P.A.
100 N. Tampa St., Suite 2325
Tampa, FL 33602
Tel: (813) 540-8401 / Fax: (813) 553-5345
Email: tmessana@underwoodmurray.com
sunderwood@underwoodmurray.com
mmurray@underwoodmurray.com

THE PLAN (AS DEFINED BELOW) HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. AS SUCH, THE DEBTOR IS NOT CURRENTLY SOLICITING VOTES ON THE PLAN AND DISCLOSURE STATEMENT. A COMBINED HEARING TO CONSIDER CONFIRMATION OF THE PLAN PURSUANT TO SECTION 1129 OF THE BANKRUPTCY CODE IS SCHEDULED FOR **____________________, at ____.** DEBTOR RESERVES THE RIGHT TO MODIFY OR SUPPLEMENT THE PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT UP TO AND INCLUDING THE TIME OF CONFIRMATION OF THE PLAN.

# CHAPTER 11 PLAN OF REORGANIZATION FOR PVP KREWSTOWN, LLC

This Amended Chapter 11 Plan of Reorganization for PVP Krewstown, LLC ("Plan") is dated as of June 9, 2025, and proposed by the above-named debtor PVP Krewstown, LLC (the "**Debtor**"). The Disclosure Statement in connection with the Chapter 11 Plan of Reorganization for the Debtor (the "**Disclosure Statement**"), which is hereby incorporated by this reference, sets forth a discussion of Debtor's history, assets, business, results of operations, historical financial information, and a summary and analysis of the Plan. All Creditors (as defined below) and Equity Interest Holders (as defined below) should review the Disclosure Statement before voting to accept or reject the Plan. In addition, there are other agreements, documents, and pleadings on file with the Bankruptcy Court that may be referenced in the Plan which are available for review upon request.

This Plan proposes to pay Creditors through recovery of Debtor's claims and other assets under the avoidance provisions of the Bankruptcy Code (as defined below), prosecution of the Debtor's other Litigation Assets (as defined below), financings or sales of Debtor's tangible assets, and operating profits derived from the restructured business of Debtor as a going concern enterprise. The restructuring contemplated in the Plan will be facilitated through the injection of capital by one or more of Debtor's Affiliates (as defined below), the implementation of a deferred maintenance plan and new management plan to stabilize the enterprise, and the prosecution of Causes of Action to recover assets. The Debtor has commitments of exit financing and a financial backstop guaranty from an Affiliate to effectuate the Plan. Net proceeds from the effectuation of the Plan shall be distributed to Creditors holding Allowed Claims (as defined below) as provided by the Plan. The Debtor anticipates that, through effectuation of the Plan, the Debtor will continue as a going concern, adequately capitalized for his business, restructured as contemplated herein with competent management and sufficient funds to pay all Creditors in full over the term of the Plan. Each Creditor or Equity Interest Holder should refer to Articles 2 and 3 of the Plan for information regarding the precise treatment of its Claim or Interest.

## ARTICLE I:
## DEFINED TERMS AND CONSTRUCTION

### 1.1 DEFINED TERMS

1.1.1 "**Administrative Claim**" means any Claim constituting a cost or expense of administration of this case under Sections 503(b) and 507(a)(1) of the Bankruptcy Code including, without limitation, any actual and necessary expenses of preserving the Estate, including Professional Fees, and any other actual and necessary expenses of operating the business of Debtor.

1.1.2 "**Administrative Claims Bar Date**" means the date established by the Bankruptcy Court by which Persons asserting Claims against Debtor that arose after the commencement of the case must file an application for the allowance and payment of such Administrative Claims, subject to Administrative Claimants' rights to supplement to add pre-confirmation Administrative Claims no later than 30

days following the Effective Date as necessary to provide for payment of all pre-confirmation Administrative Claims in the interests of justice.

1.1.3 "**Affiliate**" means Allerand or one or more affiliates of Debtor, as "affiliate" is used in 11 U.S.C. § 101(2).

1.1.4 "**Affiliate Plan Sponsor**" means Affiliate of Debtor providing the Affiliate Plan Sponsor Contribution.

1.1.5 "**Affiliate Plan Sponsor Contribution**" means the payment(s) by the Affiliate Plan Sponsor to pay all ongoing operating expenses including but not limited to Administrative Claims, Ordinary Course Administrative Claims, Class 1 Administrative Convenience Claims, and then to the extent needed, up to $2,000,000 of Allowed Claims as set forth in Article III of this Plan, provided Plan Proceeds are not sufficient to do so on or before the five year anniversary of the Effective Date, or, solely as to Class 1, on the date such Class 1 payments are due under the Plan.

1.1.6 "**Allerand**" means Allerand Realty Holdings, LLC.

1.1.7 "**Allowed**" means, with reference to any Claim: (1) a Claim that has been listed by Debtor in the Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009, and is not listed as disputed, contingent or unliquidated, and is not a Claim as to which a proof of claim has been filed; (2) a Claim as to which a timely proof of claim has been filed as of the Bar Date in a sum certain in an amount greater than $0, and either no objection thereto, or application to estimate, equitably subordinate, reclassify or otherwise limit recovery, has been made on or before any applicable deadline, or if an objection thereto, or application to estimate, equitably subordinate, reclassify or otherwise limit recovery, has been interposed, the extent to which such Claim (whether in whole or in part) has been Allowed by a Final Order; (3) a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and Allowed in accordance with Section 502(h) of the Bankruptcy Code in an amount and to an extent determined by the Bankruptcy Court in a Final Order; (4) any Claim expressly Allowed under the Plan; or (5) any Claim expressly Allowed by Final Order.

1.1.8 "**Allowed Secured Claim Payment Date**" shall have the meaning ascribed to it in Article II.

1.1.9 "**Ballots**" means the ballots accompanying the Disclosure Statement upon which Impaired Creditors shall have indicated their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

1.1.10 "**Baltimore Litigation**" means the litigation so described in the Debtor's schedules related to the Battle Baltimore Property.

1.1.11 "**Baltimore Property**" means the real estate and improvements to the real property located at 4604 Harford Road, Maryland so described in the Debtor's schedules.

1.1.12 "**Bankruptcy Code**" means Title 11 of the Bankruptcy Reform Act of 1978, as set forth in Sections 101, et seq. of Title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and as otherwise amended from time to time, and applicable portions of Titles 18 and 28 of the United States Code, as amended from time to time.

1.1.13 "**Bankruptcy Case**" means the above-captioned chapter 11 case for the Debtor that was filed on the Petition Date.

1.1.14 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division.

1.1.15 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to this case, promulgated under 28 U.S.C. Section 2075, the Local Rules, and Administrative Orders of the Bankruptcy Court.

1.1.16 "**Bar Date**" means October 13, 2023 for all creditors other than government units and January 31, 2023 for governmental units, which is the date fixed by the Bankruptcy Court pursuant to the *Notice of Chapter 11 Bankruptcy Case* (ECF No. 7) or such other date established by the Bankruptcy Court by which Persons asserting a Claim against Debtor, and who are required to file a Proof of Claim on account of such Claim, must file a Proof of Claim or be forever barred from asserting a Claim against Debtor or its property and from voting on the Plan and/or sharing in Distributions under same.

1.1.17 **"Battle Creek Litigation**" means the pending litigation so described in the Debtor's schedules related to the Battle Creek Property.

1.1.18 "**Battle Creek Property**" means the real estate and improvements located at 1434 W. Michigan Ave., Battle Creek, MI 49037 so described in the Debtor's schedules.

1.1.19 "**Bloomfield**" means Bloomfield Capital Asset Management LLC, owner of the ICA Lenders and ICA Acquirers.

1.1.20 "**Business Day**" means any day other than a Saturday, Sunday or a day that in Florida, is a legal holiday or any day designated in Bankruptcy Rule 9006(a) as a "legal holiday."

1.1.21 "**Cash**" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

1.1.22 "**Castor Litigation**" means the pending so described in the Debtor's schedules related to the Castor Property.

1.1.23 "**Castor Property**" means the real property and improvement located at 7972 Castor Avenue, Philadelphia, Pennsylvania 19162, so described in Debtor's schedules.

1.1.24 "**Causes of Action**" means, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Rents (as defined below), Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, avoidance actions under chapter 5 of the Bankruptcy Code; rights of setoff, counterclaim and recoupment; claims and defenses or for breaches of duties imposed by law; the right to object to Claims or Equity Interests; claims and defenses pursuant to Section 362 of the Bankruptcy Code; claims and defenses for fraud, negligence, conversion, mistake, duress, indemnification and usury redemption; the claims made in the Delaware Litigation; the Battle Creek Litigation; the Troy Litigation; the Castor Litigation; the Krewstown Litigation; the Waynesboro Litigation; the Baltimore Litigation; the Hines Litigation (each as defined herein); the claims to be made in the Fraudulent Transfer Adversary; any malpractice, negligence or other tort claim arising pre-petition, and any dispute to determine or adjudicate what is property of the estate under § 541 of the Bankruptcy Code, including, but not limited to, rents attributable to the Properties. This definition is intended to encompass all causes of action and litigation conceivable, and shall be construed as broadly as possible. Any doubt as to whether a claim or rights falls within the definition of "Causes of Action" shall be construed to encompass such definition.

1.1.25 "**Claim**" means any "claim" against Debtor as defined in Section 101(5) of the Bankruptcy Code.

1.1.26 "**Claims Objection Deadline**" means for each Claim, the later of: (1) ninety (90) days after the Effective Date; or (2) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claim.

1.1.27 "**Class**" means a category of Holders of Claims or Equity Interests pursuant to section 1122(a) of the Bankruptcy Code.

1.1.28 "**Collateral**" means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code, or applicable state or other law.

1.1.29 "**Confirmation**" means the entry of an order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.1.30 "**Confirmation Date**" means the date upon which the Confirmation Order is entered on the docket by the Bankruptcy Court.

1.1.31 "**Confirmation Hearing**" means the date of the final hearing at which the Bankruptcy Court considers Confirmation of the Plan.

1.1.32 "**Confirmation Order**" means the Final Order of the Bankruptcy Court confirming this Plan.

1.1.33 "**Creditor**" has the meaning ascribed to it in Section 101(10) of the Bankruptcy Code.

1.1.34 "**Creditor Profit Share**" shall have the meaning described below in the Implementation of the Plan.

1.1.35 "**Debtor**" is defined in the introduction to this Plan, and "Reorganized Debtor" to the extent applicable after the Effective Date.

1.1.36 "**Delaware Litigation**" means PVP Aston v. U.S. Bank Nat'l Assoc., Case No. N22C-03-103 AML CCLD, in the Superior Court of the State of Delaware, which case is now on appeal.

1.1.37 "**Disallowed**" means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in Debtor which: (1) has been Disallowed, in whole or part, by a Final Order of the Bankruptcy Court; (2) has been withdrawn by agreement of Debtor and the Holder thereof, in whole or in part; (3) has been withdrawn, in whole or in part, by the Holder thereof; (4) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been timely filed or deemed timely filed pursuant to this Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law; (5) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any Proof of Claim or proof of interest; or (6) is evidenced by a Proof of Claim or a proof of interest which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court but as to which such Proof of Claim or proof of interest was not timely or properly filed. In each case a Disallowed Claim or a Disallowed Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

1.1.38 "**Disclosure Statement**" means the Disclosure Statement in Connection with the Chapter 11 Plan of Reorganization for PVP Krewstown, LLC (and all exhibits and schedules annexed thereto or referenced therein that relate to the Plan), as such Disclosure Statement may be amended, modified or supplemented.

1.1.39 "**Disputed Claim**" means a Claim or Interest as to which a Proof of Claim or proof of Interest has been filed or deemed filed and as to which an objection has been or may be timely filed by any party in interest entitled to do so, which objection, if timely filed, has not been withdrawn and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely filed for the purposes of the Plan, a Claim or Interest shall be considered a Disputed Claim if: (1) the amount of the Claim or Interest specified in the filed Proof of Claim or proof of Interest exceeds the amount of the Claim or Interest scheduled by a Debtor as other than disputed, contingent, or unliquidated; (2) the priority of the Claim or Interest specified in the filed proof of Claim or proof of Interest is of a more senior priority than the priority of the Claim or Interest scheduled by a Debtor; or (3) the Claim or Interest has been Scheduled as disputed, contingent, or unliquidated or as being in the amount of "$" or $0.00.

1.1.40 "**Disputed Claims Reserve**" means an account that may be established and maintained at the election of Debtor to hold Cash to be distributed to Holders of Claims pending the resolution of Disputed Claims.

1.1.41 "**Distribution**" means any distribution pursuant to the Plan and Disclosure Statement to Holders of Allowed Claims.

1.1.42 "**Distribution Account**" means one or more deposit accounts established for the benefit of one or more Classes of Creditors in order to receive and hold funds payable to the Holders of Allowed Claims.

1.1.43 "**Effective Date**" means the first Business Day after the satisfaction or waiver of all conditions precedent to the Effective Date as set forth in this Plan.

1.1.44 "**Entity**" means an Entity as defined in Section 101(15) of the Bankruptcy Code.

1.1.45 "**Equity Interest**" means the legal interests, equitable interests, contractual interests, or other rights of any Person in Debtor, other than interests constituting or securing non-convertible indebtedness of Debtor, regardless of how such interests may be structured or denominated and whether certificated or not, pursuant to which such Person may exercise voting rights in or control over Debtor or is entitled or obligated to share in profits and losses of Debtor, and whether or not and such rights or obligations are shared ratably with other Persons or are subordinated to the rights of other Persons having an interest in Debtor, and shall include, without limitation, common voting equity securities, preferred equity securities, partnership interests, limited liability company membership interests, rights, options, warrants, contingent warrants, convertible or exchangeable equity or convertible debt securities if the same are currently convertible into a material interest in Debtor having the character above set forth, subscriptions or other agreements and contractual rights to acquire or obtain any interest in Debtor having the character above set forth, repurchase rights, redemption rights, dividend or distribution rights, preemptive rights, subscription rights or liquidation preferences, puts, calls, awards or commitments of

any character whatsoever relating to any interest in Debtor having the character above set forth or obligating Debtor to issue, transfer or sell any interest in Debtor having the character above set forth.

1.1.46 "**Estate**" means the estate created for Debtor in this Chapter 11 case pursuant to Section 541 of the Bankruptcy Code.

1.1.47 "**Executory Contract**" means a contract to which Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

1.1.48 "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

1.1.49 "**Final Order**" means an order, judgment, ruling or other decree of the Bankruptcy Court or any other court of competent jurisdiction, which judgment, order or other decree (1) has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari or seek re-argument or rehearing has expired and no appeal, re-argument, petition for certiorari or rehearing is pending or any right to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing in a manner satisfactory to Debtor, or (2) if an appeal, re-argument, petition for certiorari or rehearing thereof has been denied, the time to take any further appeal or petition for certiorari or further re-argument or rehearing has expired.

1.1.50 "**Fraudulent Transfer Adversary Proceeding**" means an adversary proceeding commenced, or to be commenced, by Debtor in the Bankruptcy Court for, among other things, Fraudulent Transfer Claims asserted under 11 U.S.C. § 548.

1.1.51 "**Fraudulent Transfer Claim(s)**" means any counts under § 548 or similar state law to avoid and recover the Properties, assets, or any other assets related thereto, or for other relief to be asserted in the Fraudulent Transfer Adversary Proceeding.

1.1.52 "**FSL**" means Financial Structures Limited.

1.1.53 "**General Unsecured Claim**" means an Allowed Claim arising prior to the Petition Date against Debtor that is not a Secured Claim, Priority Tax Claim, Priority Claim, Administrative Claim, Ordinary Course Administrative Claim, Professional Fee, or otherwise entitled to any priority by order of the Bankruptcy Court.

1.1.54 "**Governmental Unit**" means any foreign, federal, state, municipal, or other local governmental unit, including without limitation those defined under Section 101(27) of the Bankruptcy Code.

1.1.55 "**Hines Litigation**" means the pending so described in the Debtor's schedules related to the Hines Property.

1.1.56 "**Hines Property**" means the real estate and improvements located at 629 North Highway 20, Hines, Oregon, 97720 so described in the Debtor's schedules.

1.1.57 "**Holder**" means the legal or beneficial holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

1.1.58 "**ICA**" means the Insured Covenant Agreements executed by the Debtor's predecessors in 1998 as part of the Loan transaction, which purport to require the Debtor to transfer or forfeit its Properties for less than fair value.

1.1.59 "**ICA Acquirers**" means, collectively, one or all of ICA Acquisition Krewstown, LLC, ICA Acquisition Castor, LLC, ICA Acquisition Troy, LLC, ICA Acquisition Battle Creek, LLC, ICA Acquisition Hines, LLC, and ICA Acquisition Baltimore, LLC.

1.1.60 "**ICA Demand Date**" is August 6, 2021 or August 9, 2021, the date the ICA Acquirers demanded the Debtor or its predecessor entities transfer or forfeit the Properties in accordance with the ICAs and as ordered by the courts in the Battle Creek Litigation and Hines Litigation.

1.1.61 "**ICA Lender**" means any of one FI 135 Krewstown Philadelphia, LLC, FI 135 Castor Philadelphia, LLC FI 135 Troy, LLC FI 135 Battle Creek, LLC, FI 135 Hines, LLC, FI 135 Baltimore LLC, and collectively the "ICA Lenders."

1.1.62 "**Impaired**" means impaired as defined in Section 1124 of the Bankruptcy Code.

1.1.63 "**Impaired Class**" means any of Classes labeled as impaired in Article 3 of the Plan.

1.1.64 "**Impaired Creditor**" means the Holder of a Claim in an Impaired Class.

1.1.65 "**Insider**" means an insider of the Debtor, as defined in Section 101(31) of the Bankruptcy Code.

1.1.66 "**Interest**" means, in respect of any Person, any claim owned by such Person in or against another Person, or any interest in property, tangible or intangible, in each case regardless of how such claim or interest may be structured or denominated and whether evidenced in writing or not, including, without limitation, claims or interests constituting or securing non-convertible indebtedness, any Equity Interest and any claim or interest of such Person in another Person that would constitute an Equity Interest if such other Person were Debtor.

1.1.67 "**Krewstown Litigation**" means the pending litigation so described in the Debtor's schedules related to the Krewstown Property.

1.1.68 "**Krewstown Property**" means the real property and improvements located at 9280 Krewstown Road, Philadelphia, Pennsylvania 19115 so described in the Debtor's schedules.

1.1.69 "**Late Filed**" means Claims filed after the Bar Date.

1.1.70 "**Lease**" means, in respect of any Property, the net lease thereof that is now or was on the Maturity Date in effect with Rite Aid.

1.1.71 "**Lien**" means charge against or interest in property to secure payment of a debt or performance of an obligation as defined in Section 101(37) of the Bankruptcy Code.

1.1.72 "**Loans**" means those loans made by predecessors to the ICA Lenders in 1998 and allegedly acquired by the ICA Lenders on June 17, 2021.

1.1.73 "**Litigation Asset**" means any Interest or claim of Debtor sought to be confirmed, recovered, or enforced through litigation brought by Debtor, including, but not limited to, litigation of the Causes of Action and the Rent Dispute.

1.1.74 "**Loan Documents**" means the Loan Agreements, Secured Notes, Deeds of Trust, Security Agreements, Assignments of Leases and Rents, Insured Covenants Agreements, Residual Value Insurance policies, and all other documents effectuating those certain loan transactions in August of 1998 with PW Real Estate Investments, Inc. as amended from time to time.

1.1.75 "**Maturity Date**" means September 1, 2020.

1.1.76 "**Ordinary Course Administrative Claim**" means an Administrative Claim incurred in the ordinary course of business of Debtor, provided, however, that any due and unpaid, post-petition payments with respect to any rejected, or to be rejected, Executory Contract or Unexpired Lease shall not be an Ordinary Course Administrative Claim.

1.1.77 "**Payment Date**" means the date(s) upon which the payments under the Plan shall be made as provided in the Plan.

1.1.78 "**Person**" means any individual, corporation, general partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, business, Distribution Account, Governmental Unit, committee, or other Entity.

1.1.79 "**Petition Date**" means ECF No. 1, filed in the above bankruptcy case on August 4, 2023.

1.1.80 "**Plan**" means this document, inclusive of the Disclosure Statement, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the provisions of this document, the Bankruptcy Code and the Bankruptcy Rules.

1.1.81 "**Plan Proceeds**" means all cash and available proceeds to fund the Plan, including but not limited to recoveries from Causes of Action, proceeds from the sale or refinancing of the Properties, and any other cash recovered by the Estate.

1.1.82 "**Priority Claim**" means a Claim entitled to priority under Section 507 of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

1.1.83 "**Priority Tax Claim**" means a Claim entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.1.84 "**Property**" means any of the Hines Property, the Baltimore Property, the Krewstown Property, the Castor Property, the Troy Property, the Battle Creek Property (collectively known as the "**Properties**").

1.1.85 "**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in such Class.

1.1.86 "**Proof of Claim**" means a Proof of Claim, including but not limited to, any Administrative Claim, filed with the Bankruptcy Court or its duly appointed claims agent in connection with the Chapter 11 Case pursuant to Section 501 of the Bankruptcy Code.

1.1.87 "**Proof of Equity Interest**" means any proof of Equity Interest filed with the Bankruptcy Court or its duly appointed claims agent in connection with the Chapter 11 Case pursuant to Bankruptcy Rule 3002.

1.1.88 "**Professional**" means a person retained or to be compensated pursuant to Sections 326, 327, 328, 330, 503(b)(2) or (4), 1103 or 1107(b) of the Bankruptcy Code.

1.1.89 "**Professional Fees**" means those fees and expenses claimed by Professionals retained by Debtor through a Bankruptcy Court order pursuant to Sections 330, 331 and/or 503 of the Bankruptcy Code, and unpaid as of the Confirmation Date, but not including any subrogation or contribution Claim arising from any payment of any fees and expenses to a Professional other than from property of the Estate.

1.1.90 "**Rents**" means the rent amounts paid or payable by the tenant under any lease for any of the Properties.

1.1.91 "**Rent Dispute**" means any claim by the Debtor to recover the Rents, to be litigated pursuant to the Plan or Fraudulent Transfer Adversary Proceeding.

1.1.92 "**Rite Aid**" means Rite Aid Corporation, 100% owner of stock of TPL.

1.1.93 "**Sabella**" means Richard J. Sabella.

1.1.94 "**Sabella Guaranty**" means the personal guaranty of Sabella of all of the Affiliate Plan Sponsor's obligations under the Affiliate Plan Sponsor Contribution.

1.1.95 "**Secured Notes**" means the notes originally made by Debtor's predecessors to finance the acquisition of the Properties in favor of PW Real Estate Investments, Inc.

1.1.96 "**Schedules**" means the Schedule of Assets and Liabilities filed by Debtor in connection with this Chapter 11 case, as the same have been or may be amended or supplemented from time to time prior to the Effective Date.

1.1.97 "**Secured Claim**" means a Claim, including interest, fees and charges to the extent allowable pursuant to Section 506(b) of the Bankruptcy Code, that is secured by an unavoidable Lien on property in which the Estate has an interest, or that is subject to set- off under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such property, or to the extent of the amount subject to set-off, as applicable, as determined pursuant to Section 506(a) and, if applicable, Section 1129(b)(2)(a)(i)(II) of the Bankruptcy Code. Any difference between the amount of any Creditor's Allowed Claim and its Allowed Secured Claim shall be a Deficiency Claim as defined above.

1.1.98 "**Supplement**" means the supplement to be filed by Debtor five (5) business days before the Confirmation Hearing listing the executory contracts and unexpired leases Debtor will assume pursuant to the Plan.

1.1.99 "**Tax Attributes**" means any and all net operating losses and any other tax attributes belonging to Debtor.

1.1.100"**Tax Code**" means the Internal Revenue Code of 1986, as amended.

1.1.101"**TPL**" means Thrifty Payless, Inc.

1.1.102"**Transfer Documents**" means deeds and other documents evidencing transfer of title to the Properties as of the Date of the ICA Demands, for example, as required by the Battle Creek and Hines Litigation.

1.1.103 "**Troy Litigation**" means the pending litigation so described in the Debtor's schedules related to the Troy Property.

1.1.104 "**Troy Property**" means the real estate and improvements located at 2971 Maple Road, Troy, Michigan 48084 so described in the Debtor's schedules.

1.1.105 "**Undeliverable Distribution**" means a Distribution of Cash that is returned to Debtor as undeliverable or is otherwise unclaimed for ninety (90) days after the date such Distribution was made.

1.1.106 "**Underwood Murray**" means Underwood Murray, P.A., Debtor's general bankruptcy counsel.

1.1.107 "**Unexpired Lease**" means a lease of non-residential real property or personal to which Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.108 "**Unimpaired**" means a Claim that is unimpaired within the meaning of Section 1126 of the Bankruptcy Code.

1.1.109 "**U.S. Bank**" means U.S. Bank National Association.

1.1.110 "**U.S. Trustee**" means the Office of the United States Trustee for the Southern District of Florida, West Palm Beach Division.

1.1.111 "**U.S. Trustee Fees**" means fees required to be paid by 28 U.S.C. § 1930(a)(6).

1.1.112 "**Voting Deadline**" means the date established by the Bankruptcy Court by which Ballots voting for or against the Plan must be received.

1.1.113 "**Voting Instructions**" means the instructions for voting on the Plan contained in the Section of the Disclosure Statement discussing voting procedures.

1.1.114 "**Waynesboro Litigation**" means the litigation so described in the Debtor's schedules related to the Waynesboro Property.

1.1.115 "**Waynesboro Property**" means the real property and improvements located at 101 Rosser Avenue, Waynesboro, Virginia, 22980 so described in the Debtor's schedules.

## ARTICLE II:
## GENERAL PROVISIONS

### 2.1 GENERAL PROVISIONS

Unless the context otherwise requires, the foregoing terms shall have the meanings set forth above when used in capitalized form in the Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. The words "herein," "hereof" and "hereunder" and other words of similar import refer to the Plan as a whole and not any particular Article, section, subsection, or clause contained in the Plan, unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender include the masculine, feminine, and the neutral gender. Any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the

Bankruptcy Rules, as the case may be.

## ARTICLE III:
## BACKGROUND

The business enterprise now owned and operated by Debtor was created and commenced operations in 1998. At that time, the enterprise, considered as a whole, consisted of approximately fifty (50) net-leased assets, with fifty separate loans, each technically holding a separate subsidiary entity, all of which were operated and managed by the beneficial owner of the entities and assets as a single business enterprise.

Each subsidiary was structured as a net-lease pass through, such that all net rental revenue bypassed the subsidiary and went directly to the lender to pay its respective outstanding debt.

In 2002, the Affiliate Plan Sponsor became the beneficial owner of a subset of 26 of the properties. Following the sale of certain interests for tax benefits, the Affiliate Plan Sponsor re-acquired all managerial rights during 2019–2021. However, the cost and nature of the management of these assets in 2021 differed vastly from the minimal 1998 financial and management commitments. By 2021, the mortgages encumbering the 26 properties in the portfolio were alleged to be in default, the subsidiaries were facing litigation from various lenders and FSL, and many of the properties required new roofs or extensive structural repair.

In essence, by 2021, the "enterprise" had changed in its fundamental character and needed restructuring at the equity level of ownership, refinancing, capital improvements, employees, and professional management oversight it never had before. These factors, and others, were the impetus for merger transactions in 2021 and 2022, and the Debtor's reorganization.

As of the Petition Date, the Affiliate Plan Sponsor sold, refinanced or exchanged 19 of the 26 realty assets in the Affiliate Plan Sponsor's original 2002 portfolio. Regarding the remaining 7 properties, there existed more than a dozen separate cases in five states asserted by the ICA Lenders and ICA Acquirers seeking to enforce mortgages and forfeiture rights relating to the Properties, which, as of such time, had a total value admitted by Bloomfield in writing of at least $14.35 million (with potential debt of less than $6 million and subject to potential recovery of rents of over $3 million). In the absence of the Debtor's fair reorganization seeking to pay all creditors in full while operating the enterprise and prosecuting fraudulent transfer litigations resulting from the ICA Acquirers' forfeiture demands, Bloomfield (believed to own both the ICA Lenders and ICA Acquirers) will receive a windfall.

## POST-REORGANIZATION BUSINESS PLAN

Currently, on information and belief, a majority of the Properties need substantial repairs or reconfiguration. As is noted, two of the Properties are the subject of an order of specific performance, and the other Properties are subject to specific performance demands as of August 6 or 9, 2021. The Debtor also has claims for improprieties by Bloomfield in connection with the foreclosure of the Property in Waynesboro, VA.

The tenant of each of the Debtor's occupied properties is Rite Aid Corporation, which filed its own bankruptcy proceeding on October 15, 2023 (Case No. 23-bk-18993, Bankr. D. NJ). The remaining Rite Aid lease term relating to each of the Debtor's properties varies from month-to-month to years. Continuing professional management is required to ensure the value of these leasehold assets is protected and the assets are restructured to maximize value, which the Plan seeks to do.

The restructuring of the Debtor's operations as provided for in this Plan, will restore Debtor to an operating real estate company, ensuring sufficient funds for employee wages, and resulting in a positive value to the Debtor.

## EXECUTION AND IMPLEMENTATION OF THE PLAN

Post-Confirmation, the Debtor will operate with management capabilities with all rights attendant thereto, and all of Debtor's assets shall vest back in the Debtor post-Confirmation. The Debtor, anticipating recovery of its real estate assets through its Fraudulent Transfer Adversary Proceeding, must ensure all capital expenditures and deferred maintenance are addressed, and must attend to the taxes and operational needs of the Properties.

The Debtor will also pursue all Causes of Action, including but not limited to those described in the Fraudulent Transfer Adversary Proceeding section of the Disclosure Statement, and available Assets to fund the Plan, and it will apply such recoveries to payment of Allowed Claims and operating expenses. To the extent the Debtor is successful in recovering the Properties or Interests therein through the Causes of Action, it will sell or refinance some (or all) of the Properties and use the proceeds to fund Allowed Claims under the Plan. Debtor shall have eight (8) months following the entry of later of a Final Order transferring the Properties to the Debtor or otherwise resolving all Causes of Action, or a Final Order granting all Allowed Claims to Class 2 to 7 Creditors to effectuate the sale or refinance of one or more Properties for purposes of paying respective Class 2 – 7 Allowed Claims (the "**Allowed Secured Claim Payment Date**"). Class 2 through Class 7 shall be paid on or before the Allowed Secured Claim Payment Date. If a sale or refinancing of one or more of the Properties is completed before there is a Final Order allowing or disallowing a Class 2 – Class 7 Claim, then funds for such Disputed Claim shall be reserved, at closing of such sale or refinancing, from the sale or refinancing for such Disputed Claim.

Notwithstanding the foregoing, by referring to "Loan" or "Debt" or "Secured Notes" or similar phrases, the Debtor is not intending herein to waive any arguments that any Loan or Debt has been paid in whole or in part, and to what extent such alleged Loan remains a valid obligation of the Debtor, whether or not a Proof of Claim has been filed.

If and to the extent that any of the alleged Loans were not repaid, the outstanding principal amount of such Loan is unknown to the Debtor at this time because the Debtor is not aware of the extent Rents received by the ICA Lenders may have been applied to the payment of such Loans.

The Affiliate Plan Sponsor will fund Debtor's post-petition operating expenses to the extent needed, including but not limited to litigation costs, Administrative Claims, Ordinary Course Administrative Claims, and payment of Class 1 Administrative Convenience Claims, and

then to the extent needed, up to $2,000,000 as a subrogated advance on payments of Allowed Claims in Classes 8 and 9 under the Plan, if and to the extent the Plan Proceeds are not sufficient to do so (the "**Affiliate Plan Sponsor Contribution**") at the five-year anniversary of the Effective Date. The Affiliate Plan Sponsor Contribution will be reduced (or refunded by Debtor) by any Distributions made on Allowed Claims from the Plan Proceeds.

Sabella will guarantee all of the Affiliate Plan Sponsor's obligations under the Affiliate Plan Sponsor Contribution as set forth above.

Debtor's Causes of Action will not be impacted, nor will they expire (to the extent any applicable statues of limitations have not run) by the passage of the end of the Plan term or payment of any subrogation advance on any Allowed Claim, if such payment is made before the Causes of Action have been fully liquidated and Claims remain unpaid.

Debtor believes that the Plan maximizes recovery to Debtor and its estate, and it will pay all Allowed Claims in full in the best interest of all creditors.

During the term of the Plan, not to exceed 5 years, to the extent the Affiliate Plan Sponsor Contribution is utilized to pay Allowed Claims, the Affiliate Plan Sponsor shall be subrogated the rights of any Claimant up to the amount of such Allowed Claim. Notwithstanding the subrogation rights or payments on Allowed Claims, no claims will be released, waived, or dismissed by the passage of time or occurrence of such payments. In other words, to the extent the Affiliate Plan Sponsor Contribution is utilized to pay an Allowed Claim, such Allowed Claim shall not be extinguished and the Affiliate Plan Sponsor shall step into the shoes of that Claimant to the full amount of such claim, regardless of whether such Claimant elects to be treated within Class 1.

***Creditor Profit Share***

In addition to any and all other potential recoveries, each holder of an Allowed Claim shall be entitled to receive a pro rata share, based on their Allowed Claim value relative to the entirety of Allowed Claims, of ten (10) percent of all net revenues of Debtor from the Fraudulent Transfer Adversary Proceeding, less payment of all Allowed Claims and Allowed Administrative Claims (the "**Creditor Profit Share**").

## ARTICLE IV: CLASSIFICATION OF CLAIMS AND INTERESTS

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, Distribution and pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

## 4.1 UNCLASSIFIED CLAIMS

Allowed Administrative Claims (except those set forth in Class 1 below) Ordinary Course Administrative Claims, U.S. Trustee fees, Priority Tax Claims, and Professional Fees are not classified for purposes of voting on this Plan and Holders of such Claims are not required to vote on this Plan.

### 4.1.1 Administrative Claims

#### 4.1.1.1 In General

Subject to other applicable Plan provisions, unless the Holder agrees to different treatment, all Administrative Claims, other than Ordinary Course Administrative Claims, arising prior to and on the Effective Date, will be paid by Debtor, in full, in Cash on the later of: (1) on or as soon as practicable after the Effective Date; (2) if an Administrative Claim is not Allowed as of the Effective Date, then as soon as practicable after an order becomes a Final Order by which such Administrative Claim becomes an Allowed Administrative Claim; or (3) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court.

Allowed Ordinary Course Administrative Claims will be paid pursuant to the terms and conditions giving rise to such Administrative Claim, without the need for any further Final Order or action by the Holders of such Ordinary Course Administrative Claims.

### 4.1.2 Professional Fees

All Professionals seeking an award by the Bankruptcy Court, or of compensation for services rendered to Debtor or reimbursement of expenses arising prior to and on the Effective Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred, prior to the Administrative Claims Bar Date and/or pursuant to any other deadlines and procedures as may be established by the Bankruptcy Court, subject to the right to supplement within thirty (30) days of the Effective Date to ensure all pre-confirmation administrative Claims are paid in full in the interest of justice.

### 4.1.3 Priority Tax Claims

Subject to other applicable Plan provisions, unless the Holder agrees to different treatment, all Priority Tax Claims under 11 U.S.C. § 507(a)(8) arising prior to and on the Effective Date, will be paid by Debtor in full, in Cash on the later of: (1) on or as soon as practicable after the Effective Date; (2) if a Priority Tax Claim is not Allowed as of the Effective Date, then as soon as practicable after an order becomes a Final Order by which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (3) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court.

### 4.1.4 U.S. Trustee Fees

All fees due and payable under 28 U.S.C. § 1930 that have not been paid prior to the Effective Date shall be paid on or as soon as practicable after the Effective Date. Debtor estimates that as of the Effective Date, all U.S. Trustee Fees will be paid in full. After the occurrence of the Effective Date, Debtor shall pay all fees payable to the U.S. Trustee during the administration of the Plan and until the case is converted, dismissed, or closed.

## 4.2 CLASSIFIED CLAIMS

Except as set forth in § 506(a), any Creditor voting its Claim must vote its entire Claim in full in one Class and may not bifurcate its Claim between Classes.

**CLASS 1**: Administrative Convenience Class: This class consists of all Allowed Class 8 Claims of General Unsecured Creditors with Allowed Claims at or below $150,000 who vote to accept this Plan and explicitly elect in their Ballot for their entire Claim to be treated within this convenience class. A Creditor whose Claim exceeds $150,000 may elect to voluntarily reduce its Claim to $150,000 to be included in this Class and receive the treatment as set forth below.

**CLASS 2**: Secured Claim of either (1) FI 135 Krewstown Philadelphia, LLC or (2) Payor for the benefit of the Debtor under § 548(c)(Krewstown Property): This class consists of the potential Allowed Secured Claim, if any, as to the Krewstown Property, if the Debtor recovers the Krewstown Property, of either (a) FI 135 Krewstown Philadelphia, LLC, for the preexisting note and Deed of Trust related to the Krewstown Property, or, (b) if such Note and Deed of Trust were paid for the benefit of the Debtor by any claimant other than FSL, then to any allowed claim under § 548(c) for the party that paid such debt, to the extent such Claim exists. Currently, no such claims exist, unless the Debtor recovers the Krewstown Property prior to confirmation of the Plan. Regardless, if such Allowed Claim arises after confirmation of this Plan, the Plan contemplates payment of any such Allowed Claim in full pursuant to Article II of the Plan, taking into consideration application of any Rents.

**CLASS 3**: Secured Claim of either (1) FI 135 Castor Philadelphia, LLC or (2) Payor for the benefit of the Debtor under § 548(c)(Castor Property): This class consists of the potential Allowed Secured Claim, if any, as to the Castor Property, if the Debtor recovers the Castor Property, of either (a) FI 135 Castor Philadelphia, LLC, for the preexisting note and Deed of Trust related to the Castor Property, or, (b) if such Note and Deed of Trust were paid for the benefit of the Debtor by any claimant other than FSL, then to any allowed claim under § 548(c) for the party that paid such debt, to the extent such Claim exists. Currently, no such claims exist, unless the Debtor recovers the Castor Property prior to confirmation of the Plan. Regardless, if such Allowed Claim arises after confirmation of this Plan, the Plan contemplates payment of any such Allowed Claim in full pursuant to Article II of the Plan, taking into consideration application of any Rents.

**CLASS 4**: Secured Claim of either (1) FI 135 Troy, LLC or (2) Payor for the benefit of the Debtor under § 548(c)(Troy Property): This class consists of the potential Allowed Secured Claim, if any, as to the Troy Property, if the Debtor recovers the Troy Property, of either (a) FI 135 Troy, LLC, for the preexisting note and Deed of Trust related to the Troy Property, or, (b) if such Note and Deed of Trust were paid for the benefit of the Debtor by any claimant other than FSL, then to any allowed claim under § 548(c) for the party that paid such debt, to the extent such Claim exists.

Currently, no such claims exist, unless the Debtor recovers the Troy Property prior to confirmation of the Plan. Regardless, if such Allowed Claim arises after confirmation of this Plan, the Plan contemplates payment of any such Allowed Claim in full pursuant to Article II of the Plan, taking into consideration application of any Rents.

**CLASS 5**: Secured Claim of either (1) FI 135 Battle Creek, LLC or (2) Payor for the benefit of the Debtor under § 548(c)(Battle Creek Property): This class consists of the potential Allowed Secured Claim, if any, as to the Battle Creek Property, if the Debtor recovers the Battle Creek Property, of either (a) FI 135 Battle Creek, LLC, for the preexisting note and Deed of Trust related to the Battle Creek Property, or, (b) if such Note and Deed of Trust were paid for the benefit of the Debtor by any claimant other than FSL, then to any allowed claim under § 548(c) for the party that paid such debt, to the extent such Claim exists. Currently, no such claims exist, unless the Debtor recovers the Battle Creek Property prior to confirmation of the Plan. Regardless, if such Allowed Claim arises after confirmation of this Plan, the Plan contemplates payment of any such Allowed Claim in full pursuant to Article II of the Plan, taking into consideration application of any Rents.

**CLASS 6**: Secured Claim of either (1) FI 135 Hines, LLC or (2) Payor for the benefit of the Debtor under § 548(c)(Hines Property): This class consists of the potential Allowed Secured Claim, if any, as to the Hines Property, if the Debtor recovers the Hines Property, of either (a) FI 135 Hines, LLC, for the preexisting note and Deed of Trust related to the Hines Property, or, (b) if such Note and Deed of Trust were paid for the benefit of the Debtor by any claimant other than FSL, then to any allowed claim under § 548(c) for the party that paid such debt, to the extent such Claim exists. Currently, no such claims exist, unless the Debtor recovers the Hines Property prior to confirmation of the Plan. Regardless, if such Allowed Claim arises after confirmation of this Plan, the Plan contemplates payment of any such Allowed Claim in full pursuant to Article II of the Plan, taking into consideration application of any Rents.

**CLASS 7**: Secured Claim of either (1) FI 135 Baltimore, LLC or (2) Payor for the benefit of the Debtor under § 548(c)(Baltimore Property): This class consists of the potential Allowed Secured Claim, if any, as to the Baltimore Property, if the Debtor recovers the Baltimore Property, of either (a) FI 135 Baltimore, LLC, for the preexisting note and Deed of Trust related to the Hines Property, or, (b) if such Note and Deed of Trust were paid for the benefit of the Debtor by any claimant other than FSL, then to any allowed claim under § 548(c) for the party that paid such debt, to the extent such Claim exists. Currently, no such claims exist, unless the Debtor recovers the Baltimore Property prior to confirmation of the Plan. Regardless, if such Allowed Claim arises after confirmation of this Plan, the Plan contemplates payment of any such Allowed Claim in full pursuant to Article II of the Plan, taking into consideration application of any Rents.

**CLASS 8**: General Unsecured Claims: All Allowed general unsecured Claims of the Debtor (excluding the ICA Acquirers).

**CLASS 9:** Unsecured Claim of the ICA Acquirers: Class 9 consists of the unsecured Allowed Claim, if any, of the ICA Acquirers.

**CLASS 10**: Equity: All Holders of Equity Interests in Debtor.

## ARTICLE V: <u>TREATMENT OF CLAIMS AND INTERESTS</u>

**a. CLASS 1: <u>Administrative Convenience Class</u>:**

i. All Class 1 Claimants who have Allowed Claims at or below $150,000 who vote to accept this Plan and explicitly elect in their Ballots to be treated within this convenience class shall be paid or satisfied within 30 days of the Effective Date an amount constituting 50% of their Allowed Class 1 Claim.

ii. To the extent a Class 8 Claimant whose Claim exceeds $150,000 seeks to voluntarily reduce its Class 8 Claim to $150,000 to be treated as a Class 1 Claimant, such Creditor's Class 8 Claim shall be deemed Allowed at $150,000 and such Creditor shall receive 50% of such Class 8 Claim.

iii. Class 1 is impaired and entitled to vote.

**b. CLASS 2: <u>Secured Claim of either (1) FI 135 Krewstown Philadelphia, LLC or (2) Payor, other than FSL, for the benefit of the Debtor under § 548(c)(Krewstown Property):</u>**

i. In settlement and release of any Class 2 Claimant's Allowed Class 2 Claim, other than FSL, whether arising pre or post confirmation of the Plan, shall have a secured claim, to the extent Allowed and not subordinated, which shall be paid in full from sale or refinance of the Krewstown Property pursuant to the terms of Article II of the Plan. The Class 2 Claimant other than FSL shall retain whatever lien rights (i) exist under current security documents encumbering such Property (if it is granted a Class 2 Allowed Claim) or (ii) are granted by the Court under § 548(c) to another party. If payment is not made on or before the Allowed Secured Claim Payment Date, then the Allowed Class 2 Claimant other than FSL may enforce any and all of its lien rights which may exist in a court of competent jurisdiction.

ii. To the extent Class 2 is an Allowed Claim and not subordinated, it shall be entitled to share in the Creditor Profit Share.

iii. To the extent Class 2 claims exist as of the confirmation of the Plan, Class 2 is impaired and entitled to vote.

**c. CLASS 3: <u>Secured Claim of either (1) FI 135 Castor Philadelphia, LLC or (2) Payor, other than FSL, for the benefit of the Debtor under § 548(c)(Castor Property):</u>**

i. In settlement and release of any Class 3 Claimant's Allowed Class 3 Claim, other than FSL, whether arising pre or post confirmation of the Plan, shall have a secured claim, to the extent Allowed and not subordinated, which shall be paid in full from sale or refinance of the Castor Property pursuant

to the terms of Article II of the Plan. The Class 3 Claimant other than FSL shall retain whatever lien rights (i) exist under current security documents encumbering such Property (if it is granted a Class 3 Allowed Claim) or (ii) are granted by the Court under § 548(c) to another party. If payment is not made on or before the Allowed Secured Claim Payment Date, then the Allowed Class 3 Claimant other than FSL may enforce any and all of its lien rights which may exist in a court of competent jurisdiction.

ii. To the extent Class 3 is an Allowed Claim and not subordinated, it shall be entitled to share in the Creditor Profit Share.

iii. To the extent Class 3 claims exist as of the confirmation of the Plan, Class 3 is impaired and entitled to vote.

**d. CLASS 4: Secured Claim of either (1) FI 135 Troy, LLC or (2) Payor, other than FSL, for the benefit of the Debtor under § 548(c)(Troy Property):**

i. In settlement and release of any Class 4 Claimant's Allowed Class 4 Claim, other than FSL, whether arising pre or post confirmation of the Plan, shall have a secured claim, to the extent Allowed and not subordinated, which shall be paid in full from sale or refinance of the Troy Property pursuant to the terms of Article II of the Plan. The Class 4 Claimant other than FSL shall retain whatever lien rights (i) exist under current security documents encumbering such Property (if it is granted a Class 4 Allowed Claim) or (ii) are granted by the Court under § 548(c) to another party. If payment is not made on or before the Allowed Secured Claim Payment Date, then the Allowed Class 4 Claimant other than FSL may enforce any and all of its lien rights which may exist in a court of competent jurisdiction.

ii. To the extent Class 4 is an Allowed Claim and not subordinated, it shall be entitled to share in the Creditor Profit Share.

iii. To the extent Class 4 claims exist as of the confirmation of the Plan, Class 4 is impaired and entitled to vote.

**e. CLASS 5: Secured Claim of either (1) FI 135 Battle Creek, LLC or (2) Payor, other than FSL, for the benefit of the Debtor under § 548(c)(Battle Creek Property):**

i. In settlement and release of any Class 5 Claimant's Allowed Class 5 Claim, other than FSL, whether arising pre or post confirmation of the Plan, shall have a secured claim, to the extent Allowed and not subordinated, which shall be paid in full from sale or refinance of the Battle Creek Property pursuant to the terms of Article II of the Plan. The Class 5 Claimant other than FSL shall retain whatever lien rights (i) exist under current security documents encumbering such Property (if it is granted a Class 5 Allowed

Claim) or (ii) are granted by the Court under § 548(c) to another party. If payment is not made on or before the Allowed Secured Claim Payment Date, then the Allowed Class 5 Claimant other than FSL may enforce any and all of its lien rights which may exist in a court of competent jurisdiction.

ii. To the extent Class 5 is an Allowed Claim and not subordinated, it shall be entitled to share in the Creditor Profit Share.

iii. To the extent Class 5 claims exist as of the confirmation of the Plan, Class 5 is impaired and entitled to vote.

**f. CLASS 6: <u>Secured Claim of either (1) FI 135 Hines, LLC or (2) Payor, other than FSL, for the benefit of the Debtor under § 548(c)(Hines Property</u>):**

i. In settlement and release of any Class 6 Claimant's Allowed Class 6 Claim, other than FSL, whether arising pre or post confirmation of the Plan, shall have a secured claim, to the extent Allowed and not subordinated, which shall be paid in full from sale or refinance of the Hines Property pursuant to the terms of Article II of the Plan. The Class 6 Claimant other than FSL shall retain whatever lien rights (i) exist under current security documents encumbering such Property (if it is granted a Class 6 Allowed Claim) or (ii) are granted by the Court under § 548(c) to another party. If payment is not made on or before the Allowed Secured Claim Payment Date, then the Allowed Class 6 Claimant other than FSL may enforce any and all of its lien rights which may exist in a court of competent jurisdiction.

ii. To the extent Class 6 is an Allowed Claim and not subordinated, it shall be entitled to share in the Creditor Profit Share.

iii. To the extent Class 6 claims exist as of the confirmation of the Plan, Class 6 is impaired and entitled to vote.

**g. CLASS 7: <u>Secured Claim of either (1) FI 135 Baltimore, LLC or (2) Payor, other than FSL, for the benefit of the Debtor under § 548(c)(Baltimore Property</u>):**

i. In settlement and release of any Class 7 Claimant's Allowed Class 7 Claim, other than FSL, whether arising pre or post confirmation of the Plan, shall have a secured claim, to the extent Allowed and not subordinated, which shall be paid in full from sale or refinance of the Baltimore Property pursuant to the terms of Article II of the Plan. The Class 7 Claimant other than FSL shall retain whatever lien rights (i) exist under current security documents encumbering such Property (if it is granted a Class 7 Allowed Claim) or (ii) are granted by the Court under § 548(c) to another party. If payment is not made on or before the Allowed Secured Claim Payment Date, then the Allowed Class 7 Claimant other than FSL may enforce any

and all of its lien rights which may exist in a court of competent jurisdiction.

ii. To the extent Class 7 is an Allowed Claim and not subordinated, it shall be entitled to share in the Creditor Profit Share.

iii. To the extent Class 7 claims exist as of the confirmation of the Plan, Class 7 is impaired and entitled to vote.

**h. CLASS 8: <u>Allowed General Unsecured Claims (excluding FSL and ICA Acquirer Claimants)</u>**

i. Except to the extent that the Holder of an Allowed Class 8 Claim agrees to less favorable treatment, or properly elects treatment as a Class 1 Claimant, holders of Allowed Class 8 Claims shall receive, on account of their Allowed Class 8 Claims, as soon as practicable following their Allowance, to the extent Plan Proceeds are available, their pro rata share of the remainder of Plan Proceeds following payment of all Allowed Class 1 – Class 7 Claims on or before the sixtieth (60th) full month following the Effective Date. To the extent Plan Proceeds from these recoveries are not sufficient such that the Causes of Action have not recovered $2,000,000 or more on or prior to the 60th month of the Plan, the Affiliate Plan Sponsor will contribute the Affiliate Plan Sponsor Contribution up to $2,000,000 to pay Allowed Class 8 Claims and the Affiliate Plan Sponsor shall subrogate to the right of the Allowed Class 8 Claims so paid.

ii. Debtor estimates that Class 8 Allowed General Unsecured Claims will be paid in full.

iii. Allowed Claims in Class 8 that are not subordinated shall be entitled to share in the Creditor Profit Share.

iv. Class 8 is impaired and entitled to vote.

**i. CLASS 9: <u>Allowed Unsecured Claim of ICA Acquirers</u>**

i. To the extent not subordinated, an Allowed Class 9 Claim, if any, shall receive, on account of its Claim, as soon as practicable following Allowance, to the extent Plan Proceeds are available, their pro rata share of the remainder of Plan Proceeds following payment of all Allowed Class 1 – Class 8 Claims, on or before the sixtieth (60th) full month following the Effective Date. To the extent Plan Proceeds from these recoveries are not sufficient such that the Causes of Action have not recovered $2,000,000 or more on or prior to the 60th month of the Plan, the Affiliate Plan Sponsor will contribute the Affiliate Plan Sponsor Contribution up to $2,000,000 to pay Allowed Class 9 Claims and the Affiliate Plan Sponsor shall subrogate to the right of the Allowed Class 9 Claims so paid.

ii. Allowed Claims in Class 9 that are not subordinated shall be entitled to share in the Creditor Profit Share.

iii. The Debtor estimates that Class 9 Allowed General Unsecured Claims will be paid in full.

iv. Class 9 Claimants are the defendants to the Debtor's Fraudulent Transfer Claims, with exposure of being ordered to return the Properties (or their values) to the Debtor, which are worth at least $12 million dollars. The Debtor reserves all claim objections against Class 9, including pursuant to §502(d), and setoff rights as to Class 9.

v. To the extent such claims are Allowed, and not subject to setoff, Debtor estimate Class 9 will be paid in full.

vi. Class 9 is impaired and entitled to vote.

**j. CLASS 10: Equity interests in Debtor**

i. Allowed Class 10 Equity Interests shall maintain their Equity Interests in Debtor in exchange for the Affiliate Plan Sponsor Contribution and the Sabella Guaranty which will backstop Debtor's obligations under the Plan to pay Allowed Claims and provide funds sufficient to operate Debtor in the ordinary course of business until final determination of all matters which are the subject of the Plan, including funding of all Causes of Action necessary to effectuate the Plan. Class 10 Equity Interests distributions shall be subordinated to the Creditor Profit Share.

5.1.2 **Elimination of Classes**

To the extent applicable, any Class that does not contain any Allowed Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected the Plan under Section 1129(a)(8) of the Bankruptcy Code.

## 5.1 GENERAL SETTLEMENT OF CLAIMS

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan. All Distributions made to Holders of Allowed Claims are intended to be and shall be final.

## 5.2 PRESERVATION OF CAUSES OF ACTION

The reorganized Debtor shall be assigned and may enforce all rights to commence and pursue any and all Causes of Action, and such Causes of Action shall vest in the reorganized Debtor as of the Effective Date.

The reorganized Debtor in its sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce such Causes of Action (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action. The reorganized Debtor or any successors may pursue such litigation claims in accordance with the best interests of Debtor or any successor holding such rights of action. No entity may rely on the absence of a specific reference in the Plan to any Cause of Action against it as any indication that Debtor will not pursue any and all available Causes of Action against it. The reorganized Debtor expressly reserves all rights to prosecute any and all Causes of Action against any Person, except as otherwise provided in the Plan. Unless any Cause of Action against any Person is expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or Final Order, Debtor expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), waiver or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the Plan.

## 5.3 POST-CONFIRMATION POWERS OF THE REORGANIZED DEBTOR

Debtor's rights and powers shall include all rights and powers of any Entity operating under the laws of the state of Delaware, including but not limited to the following:

i. Sell at public or private sale, or exchange, transfer, or convey, on such terms and conditions and at such time or times, as the reorganized Debtor shall determine, any or all of Debtor's assets (whether tangible or intangible); to that end, grant options, make options, make contracts, retain brokers, and sign, seal, knowledge, and deliver any and all proper conveyance documents or other instruments of conveyance or transfer thereof; and delegate to an attorney in fact the power to execute all documents necessary to accomplish a sale, lease, transfer or exchange of any such property.

ii. Subject to any limitations contained in the Plan, pay, compromise, settle, adjust, agree to, investigate, pursue, or contest any and all claims or Causes of Action, including claims described in the Plan, other matters, or taxes.

iii. Investigate, prosecute, litigate, and settle any and all Causes of Action, including any Cause of Action brought by Debtor prior to the Effective Date, which Causes of Action, Avoidance Actions, rights to payment and claims as of the Effective Date shall vest solely and exclusively in Debtor, for the benefit of the Estate, pursuant to the terms of the Plan.

iv. (i) invest funds; (ii) make distributions; (iii) pay taxes and other obligations owed

by the reorganized Debtor; (iv) engage and compensate from the assets of the reorganized Debtor consultants, agents, employees, and Professionals (including, without limitation, attorneys on a contingency fee basis; (v) retain and compensate from the reorganized Debtor's assets the services of professionals to assist and/or advise in the sale or other disposition of assets; (vi) compromise and settle Claims and Causes of Action; (vii) as necessary, act on behalf of the Estate in all adversary proceedings and contested matters, (including but not limited to the Fraudulent Transfer Adversary Proceeding), and in all actions involving assets of the Estate that could arise or be asserted at any time, unless otherwise expressly waived or expressly relinquished in the Plan; (viii) commence and/or pursue any and all actions involving assets of the Debtor that could arise or be asserted at any time, unless otherwise expressly waived or expressly relinquished in the Plan; and (xi) act and implement the Plan and orders of the Bankruptcy Court.

## ARTICLE VI: <u>CONDITIONS PRECEDENT TO AND INJUNCTIONS AS OF THE EFFECTIVE DATE</u>

### 6.1 CONDITIONS PRECEDENT

6.1.1 **Conditions to Confirmation Date.** The following conditions precedent to the occurrence of the Confirmation Date must be satisfied unless any such condition shall have been waived by Debtor.

6.1.1.1 The Confirmation Order shall have been entered in form and substance satisfactory to Debtor and shall, among other things, provide that Debtor is authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with the Plan;

6.1.1.2 The Bankruptcy Court finds that adequate information and sufficient notice of the Plan, and the Confirmation Hearing, along with all deadlines for voting on or objecting to the Plan, has been given to all relevant parties in accordance with the solicitation procedures governing such service and in substantial compliance with Bankruptcy Rules 2002(b), 3017 and 3020(b); and

6.1.1.3 All exhibits to the Plan are in form and substance satisfactory to Debtor and as applicable, the Bankruptcy Court.

6.1.2 **Conditions to Effective Date.** The following conditions precedent to the occurrence of the Effective Date must be satisfied or waived by Debtor on or prior to the Effective Date:

6.1.2.1 The Plan, including any amendments, modifications, or supplements thereto, shall be in form and substance acceptable to Debtor;

6.1.2.2 Debtor shall have received commitments from the Affiliate Plan Sponsor for the Affiliate Plan Sponsor Contribution.

6.1.2.3 Debtor shall have received Sabella's Guaranty of the Affiliate Plan Sponsor's obligations under the Affiliate Plan Sponsor Contribution.

6.1.2.4 The Confirmation Order shall be a Final Order which approves and authorizes Debtor to take all actions necessary or appropriate to implement the Plan, including completion of the transactions contemplated by the Plan and the implementation of and consummation of contracts, instruments, releases, and other agreements or documents created in connection with the Plan; and

6.1.2.5 Each of the exhibits to the Plan and any other necessary documents shall be fully executed and delivered to Debtor, shall be in form and substance acceptable to Debtor, and shall be fully enforceable in accordance with their terms.

6.1.3 **Notice of Occurrence of Effective Date**

Debtor shall file a notice of the occurrence of the Effective Date within five (5) business days after the Effective Date.

6.1.4 **Substantial Consummation**

Substantial Consummation of the Plan shall be deemed to occur on the Effective Date.

6.2 **PLAN INJUNCTIONS**

6.2.1 **GENERAL INJUNCTION.**

**PURSUANT TO §§105, 524, 1123, 1129, AND 1141 OF THE BANKRUPTCY CODE, TO PRESERVE AND IMPLEMENT THE VARIOUS TRANSACTIONS CONTEMPLATED BY AND PROVIDED FOR IN THE PLAN, AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, ALL PERSONS THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM OR OTHER DEBT OR LIABILITY, THAT IS DISCHARGEABLE PURSUANT TO THE TERMS OF THE PLAN ARE AND SHALL BE PERMANENTLY ENJOINED AND FOREVER BARRED TO THE FULLEST EXTENT PERMITTED BY LAW FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH DISCHARGED CLAIMS, DEBTS OR LIABILITIES, OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN OR THE PLAN DOCUMENTS: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST DEBTOR,**

**OR THE PROPERTIES; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST DEBTOR OR ITS ASSETS; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST DEBTOR OR ITS ASSETS; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO DEBTOR; OR (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER. DEBTOR SHALL HAVE THE RIGHT TO INDEPENDENTLY SEEK ENFORCEMENT OF THIS GENERAL INJUNCTION PROVISION, WHICH IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION.**

6.2.2 **THIRD PARTY INJUNCTION**

**DEBTOR'S PROFESSIONALS (ACTING IN SUCH CAPACITY), SHALL NEITHER HAVE NOR INCUR ANY LIABILITY WHATSOEVER TO ANY PERSON FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN GOOD FAITH IN CONNECTION WITH OR RELATED TO THE FORMULATION, PREPARATION, DISSEMINATION, IMPLEMENTATION, CONFIRMATION, OR CONSUMMATION OF THE PLAN, ANY PLAN DOCUMENT, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO, OR ANY OTHER ACT TAKEN OR OMITTED TO BE TAKEN, IN CONNECTION WITH THE PLAN OR THE BANKRUPTCY CASE; PROVIDED, HOWEVER, THAT THIS EXCULPATION FROM LIABILITY PROVISION SHALL NOT BE APPLICABLE TO ANY LIABILITY FOUND BY A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED FROM GROSS MISMANAGEMENT, BREACH OF FIDUCIARY DUTY, FRAUD OR THE WILLFUL MISCONDUCT OF ANY SUCH PARTY, OR FOR PREPETITION CONDUCT. THE RIGHTS GRANTED HEREIN ARE CUMULATIVE WITH (AND NOT RESTRICTIVE OF) ANY AND ALL RIGHTS, REMEDIES, AND BENEFITS THAT DEBTOR OR ITS PROFESSIONALS HAVE OR OBTAIN PURSUANT TO ANY PROVISION OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW. THIS EXCULPATION FROM LIABILITY PROVISION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO ITS IMPLEMENTATION. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, THE PROVISIONS OF THIS ARTICLE SHALL NOT RELEASE OR BE DEEMED A RELEASE OF ANY OF THE CAUSES OF ACTION.**

## ARTICLE VII:
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

At least five (5) business days before the Confirmation Hearing, Debtor shall file a list of all Executory Contracts and Unexpired Leases to be assumed under the Plan (the "**Supplement**").

Any motions to assume on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

### 7.1 CLAIMS DEADLINE

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, or as the Bankruptcy Court may otherwise direct. Any Claims arising from rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be forever barred from assertion against the Debtor's Estate, the Distribution Account, any Distribution Account, Debtor, and all its property, and the Holder of such Claim shall not be entitled to any Distribution under the Plan.

### 7.2 CURE OF DEFAULTS FOR ASSUMED CONTRACTS

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the assignment of such Executory Contract and Unexpired Lease, on such other terms as Debtor and the counterparties to such Executory Contracts or Unexpired Leases may otherwise agree, or as ordered by the Bankruptcy Court. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption (or conditional assumption) or cure shall be deemed to have consented to such matters.

### 7.3 POST-PETITION CONTRACTS AND LEASES

To the extent provided in the Confirmation Order, contracts and leases entered into after the Petition Date by Debtor, including any Executory Contracts and Unexpired Leases assumed on behalf of the Estate, shall be performed by Debtor. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order unless otherwise noted.

## ARTICLE VIII:
## <u>DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS</u>

### 8.1 OBJECTION TO CLAIMS

After the Effective Date, but on or before the Claims Objection Deadline, Debtor shall have the authority to file objections to Claims (other than Administrative Claims). Any party in interest may also file objections to the allowance of any Claims (other than Administrative Claims) after the Effective Date but on or before the Claims Objection Deadline. Subject to limitations described in the Plan, Debtor shall have exclusive authority to compromise, settle, litigate, otherwise resolve or withdraw any objections filed by Debtor. If any joinder is made with respect to an objection

filed by Debtor, and the objection is subsequently withdrawn, the joinder shall be deemed withdrawn as well. Unless otherwise ordered by the Bankruptcy Court, all objections to the allowance of Claims or Equity Interests that are the subject of Proofs of Claim or Proofs of Interest or requests for payment filed with the Bankruptcy Court, shall be filed and served upon the Holder of the Claim or Equity Interest to which the objection is made prior to the Claims Objection Deadline or such other date as may be approved by the Bankruptcy Court. Any Claim or Interest not otherwise Allowed as provided in the Plan shall be a Disallowed Claim or Interest, respectively. Upon filing a responsive pleading to an objection, the Disputed Claim Holder shall submit to mediation and shall split the cost of same evenly with Debtor, as one party, and the objecting party, as the other party.

### 8.2 ESTIMATION AND DETERMINATION OF CLAIMS

Disputed Claims will be fixed or liquidated in the Bankruptcy Court on or before the Claims Objection Deadline, as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in administration, such Claim may be estimated by the Bankruptcy Court for purposes of allowance and Distribution. Upon receipt of a timely filed Proof of Claim, Debtor, or another party in interest may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in estimation hearings will be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution.

### 8.3 DISPUTED CLAIMS RESERVE

Debtor may elect to maintain a Disputed Claims Reserve equal to the aggregate of any distributable amounts of Cash, such amount being equal to the relevant percentage of the Distributions to which Holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims in the amount of such Disputed Claim or such lesser amount as required by a Final Order. For the purposes of effectuating the provisions of this section and Distributions to Holders of Allowed Claims, Debtor may, at any time and regardless of whether an objection to the Disputed Claim has been brought, request that the Bankruptcy Court estimate, set, fix or liquidate the amount of Disputed Claims pursuant to Section 502(e) of the Bankruptcy Code, in which event the amounts so estimated, fixed or liquidated shall be deemed the Allowed amounts of such Claims for purposes of Distribution under this Plan. In lieu of estimating, fixing or liquidating the amount of any Disputed Claim, the Bankruptcy Court may determine the amount to be reserved for such Disputed Claim (singularly or in the aggregate), or such amount may be fixed by an agreement in writing by and between Debtor and the Holder of a Disputed Claim.

### 8.4 DISTRIBUTION UPON ALLOWANCE OF DISPUTED CLAIMS

The Holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive Distribution from the Disputed Claims Reserve in accordance with the Plan based on the Distributions that would have been made to such Holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date plus any interest,

dividends or other Distributions earned thereon (if any). No Holder of a Disputed Claim shall have any Claim against the Disputed Claims Reserve, Debtor, the Distribution Account, or the Estate with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no Holder of a Disputed Claim shall have any right to interest, dividends or other Distribution on such Disputed Claim except as provided in this Section.

## ARTICLE IX:
## ACCEPTANCE OR REJECTION OF PLAN

### 9.1 VOTING BY IMPAIRED CLASSES

Each Holder of an Allowed Claim in an Impaired Class which is entitled to retain or receive property under the Plan shall be entitled to vote separately to accept or reject the Plan, and indicate such vote on a duly executed and delivered Ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court. Only those votes cast by Holders of Allowed Claims and Allowed Interests shall be counted in determining whether acceptances have been received sufficient in number and amount to confirm the Plan.

### 9.2 ACCEPTANCE BY IMPAIRED CLASSES

An Impaired Class of Claims shall have accepted the Plan if: (1) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan; and (2) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of Allowed Interests actually voting in such Class have voted to accept the Plan.

### 9.3 PRESUMED ACCEPTANCE/REJECTION

Classes 1–9 are impaired under the Plan and, therefore, are not presumed to have accepted the Plan under Section 1126 of the Bankruptcy Code. Class 10 Equity Interest Holders shall retain their Equity Interests under the Plan and are entitled to vote.

### 9.4 NONCONSENSUAL CONFIRMATION

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, Debtor reserves it rights to request Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code and to demonstrate that the Plan does not discriminate unfairly and is fair and equitable to the non-consenting Impaired Class, and that all non-consenting Impaired Creditors receive recoveries which are no worse than those available in a chapter 7 liquidation. Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan or any schedule or exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE X:
## PROVISIONS GOVERNING DISTRIBUTIONS

### 10.1 DISTRIBUTIONS FOR ALLOWED CLAIMS

#### 10.1.1 In General

Debtor shall assume all obligations to make Distributions in accordance with the Plan from the Plan Proceeds held in the Distribution Account, limited to the Distributions expressly provided for in the Plan and/or approved by Final Order.

#### 10.1.2 Distribution of Net Recoveries

To the extent funds are distributed prior to the end of the Plan term but less than the full amount owing to Allowed Claims in Classes 8 and 9 have been paid, Debtor may, in its sole and absolute discretion, take into consideration and reserve any amounts needed to (1) meet any contingent liabilities Debtor expects and to pay reasonably incurred or anticipated expenses (including, without limitation, any taxes or fees imposed, or to satisfy other liabilities incurred or anticipated by Debtor in carrying out the Plan); provided, however, Debtor shall not be required to make any interim Distribution if in its sole discretion, Debtor determines the expense associated with making the Distribution would make the Distribution impracticable.

#### 10.1.3 Distributions on Allowed Claims Only

Distributions shall be made only to Holders of Allowed Claims on account of such Holder's Allowed Claims. Until a Disputed Claim becomes an Allowed Claim in its entirety, the Holder of that Disputed Claim shall not receive any Distribution.

#### 10.1.4 Place and Manner of Payment of Distribution

Except as otherwise specified in the Plan, Distributions shall be made by mailing such Distribution to the Creditor at the address listed in any Proof of Claim, or Proof of Equity Interest, as the case may be, filed by the Creditor or at such other address as such Creditor shall have specified for payment purposes in a written notice received by Debtor at least twenty (20) days before a Distribution is made. If a Creditor has not filed a Proof of Claim or Proof of Equity Interest, or sent Debtor a written notice of payment address, then the Distribution(s) for such Creditor will be mailed to the address identified in the Schedules. Debtor shall distribute any Cash by wire, check, or such other method as it deems appropriate under the circumstances. Before receiving any Distributions, each Creditor, at the request of Debtor, must provide written notification of its Federal Tax Identification Number or Social Security Number to Debtor; otherwise, Debtor may suspend Distributions to any Creditor that has not provided its Federal Tax Identification Number or Social Security Number.

10.1.5 **Undeliverable Distributions**

If a Distribution made from available cash to any Creditor is returned as undeliverable, Debtor shall use reasonable efforts to determine such Creditor's then current address. If Debtor cannot determine, or is not notified of, a Creditor's then current address within three months after the Effective Date, the Distribution reserved for such Creditor shall be deemed an unclaimed Distribution and section 8.1.6 – "Unclaimed Distributions" shall be applicable thereto.

10.1.6 **Unclaimed Distributions**

If the current address for a Creditor entitled to a Distribution from available cash or Plan Proceeds under the Plan has not been determined within three months after the Effective Date or such Creditor has otherwise not been located or submitted a valid Federal Tax Identification Number or Social Security Number to Debtor, then such proceeds shall be paid to the Bankruptcy Bar Foundation, Southern District of Florida.

10.1.7 **Set-Offs**

Except as otherwise provided in the Plan, agreements entered into in connection therewith, the Confirmation Order, or agreements previously approved by Final Order of the Bankruptcy Court, Debtor may set off against any Allowed Claim before any Distribution is made on account of such Allowed Claim, any and all of the Claims, rights and Causes of Action of any nature that Debtor holds against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release of any such Claims, rights or Causes of Action that Debtor may possess against such Holder.

10.1.8 **Withholding**

Any party entitled to receive any property under the Plan shall, upon request by the Debtor, provide an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8. If such request is made and such party fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to Debtor and be discharged and forever barred from assertion against Debtor or its assets.

## 10.2 TRANSFER OF CLAIMS

In the event the Holder of any Claim transfers such Claim on and after the Effective Date, it will immediately so advise Debtor and Underwood Murray, P.A. in writing of such transfer, and file notice of such transfer with the Bankruptcy Court within ten (10) business days of such transfer. Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless Debtor and Underwood Murray, P.A. have received written notice to the contrary, which has been filed with the Bankruptcy Court. Each transferee of any Claim will take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, Debtor will be entitled to assume conclusively that the transferee named in such notice will thereafter be vested

with all rights and powers of the transferor under the Plan.

## ARTICLE XI:
## RETENTION OF JURISDICTION

### 11.1 GENERAL RETENTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction of the Bankruptcy Case that is permitted by applicable law, within the discretion of the Bankruptcy Court, including jurisdiction necessary to ensure that the purposes and intent of the Plan are carried out.

### 11.2 SPECIFIC PURPOSES

In addition to the general retention of jurisdiction set forth in this Article over the Bankruptcy Case and the Plan, after Confirmation of the Plan and until the Bankruptcy Case is closed, the Bankruptcy Court will retain jurisdiction of the Bankruptcy Case for the following specific purposes:

11.2.1 To determine any and all motions, applications, or disputes arising under or relating to the Plan or the Confirmation Order or the general bankruptcy case, (regardless of whether conditions to the consummation and/or Effective Date of the Plan have been satisfied), including determining any and all proposed settlements related thereto and brought before the Bankruptcy Court;

11.2.2 To determine all disputes, Causes of Action, adversary proceedings, or other controversies arising under or related to this Case, to the extent not otherwise appealed, abstained from by the Bankruptcy Court, determined to be beyond the Bankruptcy Court's jurisdiction, or has had the reference withdrawn to the District Court;

11.2.3 To determine any and all applications for allowance of Professional Fees arising out of or relating to this Bankruptcy Case;

11.2.4 To enforce, interpret, and administer the terms and provisions of the Plan;

11.2.5 To modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

11.2.6 To consider and act on all objections to Claims, counterclaims and the compromise and settlement of any Claim by or against or Equity Interest or interest in the Estate;

11.2.7 To correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary change or modification in or to the Plan, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or

appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

11.2.8 To enforce all orders, judgments, injunctions, and rulings entered in connection with the Bankruptcy Case;

11.2.9 To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

11.2.10 To determine all questions and disputes regarding title to the assets of Debtor or the Estate or disputes arising pre-petition between Debtor and any other Person over which this Court has jurisdiction;

11.2.11 To determine any motions or contested matters involving taxes, tax refunds, Tax Attributes, tax benefits, development rights, impact fees, and similar or related matters with respect to Debtor or the Estate arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

11.2.12 To resolve any determinations which may be requested by Debtor of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146(d) of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

11.2.13 To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

11.2.14 To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.2.15 To determine any other matters that may arise in connection with or relating to the Plan or the Confirmation Order;

11.2.16 To determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

11.2.17 To enter an order concluding and terminating the Bankruptcy Case; and

11.2.18 To enter an order reopening the Bankruptcy Case after the case has been closed.

## ARTICLE XII:

## MODIFICATION AND CONFIRMATION OVER OBJECTION

### 12.1 MODIFICATION OF PLAN

Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, meets applicable requirements of the Bankruptcy Code and Bankruptcy Rules. At any time prior to solicitation of Ballots under the Plan, Debtor reserves the right to make non-substantive modifications to the Plan.

After the Confirmation Date and before the Effective Date, Debtor may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims or Equity Interests, provided: (1) the Plan, as modified, meets applicable Bankruptcy Code requirements; (2) Debtor obtains Bankruptcy Court approval for such modification, after notice and a hearing; (3) such modification is accepted by at least two-thirds (2/3) in amount, and more than one-half (1/2) in number, of Allowed Claims or Allowed Equity Interests voting in each Class adversely affected by such modification; and (4) Debtor complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

### 12.2 CRAMDOWN

In the event any Class of Claims or Equity Interests votes against the Plan, and the Plan is not revoked or withdrawn, Debtor hereby requests, and will be Allowed, to modify the terms of the Plan to effect a "cramdown" on the dissenting Class or Classes by (1) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (2) deleting Distributions to all Classes at or below the level of the objecting Class, or reallocating such Distributions, until such Impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. Debtor may make such modifications or amendments to the Plan and such modifications or amendments will be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice of the Confirmation Hearing. No such modifications will require any re-solicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court requires otherwise.

Notwithstanding any provision of the Plan to the contrary, Debtor reserves any and all rights it may have to challenge the validity, perfection, priority, scope, and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

## ARTICLE XIII:
## MISCELLANEOUS PROVISIONS

### 13.1 DISCHARGE

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise provided herein or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release, effective as of the

Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on such Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, Debtor or any of its assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (1) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (2) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (3) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (4) the Holder of a Claim based upon such debt accepted the Plan. The Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or vote to reject the Plan.

As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against Debtor or any of Debtor's assets, any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination, as of the Effective Date, of discharge of all such Claims and other debts and liabilities against Debtor pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against Debtor at any time, to the extent that such judgment relates to a discharged Claim.

## 13.2 SECTION 1146 EXEMPTION

Pursuant to Section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan, including any financing obtained to fund payments under the Plan, or the re-vesting, transfer, or sale of any real or personal property of, by, or in Debtor's possession pursuant to, in implementation of, or as contemplated by, the Plan, will not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

## 13.3 NO ADMISSIONS

The Plan provides for the resolution, settlement, and compromise of Claims against and Equity Interests in the Debtor. Nothing herein will be construed to be an admission of any fact or otherwise to be binding upon Debtor or any other Person in any manner prior to the Effective Date.

## 13.4 REVOCATION OR WITHDRAWAL OF PLAN

Debtor reserves the right to revoke or withdraw the Plan, or any portion thereof, prior to the Confirmation Date. If Debtor revokes or withdraws the Plan, then the Plan will be deemed null and void and nothing contained in the Plan will be deemed to (1) constitute a waiver or release of

any Claims by or against, or Equity Interests in, the Estate in the Bankruptcy Case or any other Person, or (2) prejudice in any manner the rights of Debtor or any other Person in any further proceedings involving Debtor and/or the Bankruptcy Case.

### 13.5 HEADINGS

The headings and table of contents used in the Plan are for convenience of reference only and do not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

### 13.6 NOTICES

All notices, requests, and other documents in connection with the Plan or required by the Plan to be served will be in writing and will be sent (1) first class United States mail, postage prepaid, or (2) by overnight delivery by a recognized courier service, to Debtor and Underwood Murray at the following addresses:

To Debtor:

PVP KREWSTOWN, LLC
c/o Richard Sabella
675 W Indiantown Road
Jupiter, FL 33458

With a copy to:

Scott Underwood or Megan Murray
Underwood Murray, P.A.
100 N. Tampa St.
Suite 2325
Tampa, FL 33302

### 13.7 GOVERNING LAW

Except to the extent that federal law (including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure) is applicable, or where the Plan or the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provide otherwise, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

### 13.8 LIMITATION ON ALLOWANCE

No attorney's fees, costs, punitive damages, penalties, exemplary damages, treble damages, late charges, or interest will be paid with respect to any Claim or Equity Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

## 13.9 ESTIMATED CLAIMS

To the extent that any Claim is estimated for any purpose other than for voting, then in no event will such Claim be Allowed in an amount greater than the estimated amount.

## 13.10 PARTIES AND BINDING EFFECT

The Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto, including but not limited to all Holders of Claims, Holders of Equity Interests, Holders of Administrative Claims, employees, third party beneficiaries, shareholders, Governmental Authorities, parties to executory contracts and unexpired leases, in whatever capacity, and all officers, agents, successors, assigns, servants, employees, attorneys thereof and any party in active concert or participation with any of the foregoing Persons. Receipt of the Plan shall be deemed sufficient notice of the content and effect thereon to bind each of the foregoing Persons in all applicable capacities, and its officers, agents, successors, assigns, servants, employees, attorneys and any party in active concert or participation with the such Person. Any of the foregoing Persons failing to timely object to Confirmation of the Plan, or who does so object but has such objection overruled by the Bankruptcy Court, shall be deemed to consent to, and shall be bound by, the terms of the Plan as confirmed by the Bankruptcy Court.

## 13.11 CONSENT TO JURISDICTION

By accepting any Distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any cure claim or objection to the assumption or assignment of any assumed contract, by voting on the Plan, by filing an objection to Confirmation, by filing any motion or application in the Bankruptcy Court, or by entering an appearance in the Bankruptcy Case, all Creditors and other parties in interest have consented, and will be deemed to have expressly consented to, the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under, or in connection with, the Plan or the Bankruptcy Case, including the matters and purposes set forth in the Plan. The Bankruptcy Court will maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in the Plan.

## 13.12 SUCCESSORS AND ASSIGNS

The rights, benefits, duties, and obligations of any Person named or referred to in the Plan will be binding upon, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person.

## 13.13 ENTIRE AGREEMENT

The Plan sets forth the entire agreement and undertakings relating to the subject matter thereof and supersedes all prior discussions and documents. No Person will be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be

agreed to by the parties in writing.

### 13.14 **SEVERABILITY OF PLAN PROVISIONS**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.15 **COMPUTATION OF TIME**

In computing any period of time prescribed or allowed by the Plan, the provisions of F.R.B.P. 9006(a) will apply.

[SIGNATURES TO FOLLOW]

PVP KREWSTOWN, LLC

By: ______________________
Richard Sabella, Authorized Agent